IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RILEY FORSYTHE,

OPINION AND ORDER

          Plaintiff,

14-cv-509-bbc

      v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Riley Forsythe is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for disability insurance benefits and supplemental social security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge who decided the case concluded that plaintiff suffered from the severe impairments of status-post femur fracture, left ankle fracture, status-post left knee arthroscopy and right rotator cuff impairment, but that plaintiff retained the residual functional capacity to perform sedentary work that did not require him to reach overhead with his right arm more than occasionally.

Plaintiff contends that the administrative law judge failed to give proper weight to statements by plaintiff's treating physicians that he could not perform sustained work and gave too much weight to his testimony regarding his daily activities. (These are the only

1

challenges I will consider.  Plaintiff is represented by experienced counsel and has chosen to confine his challenges to these.  Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000) ("issues that are not raised before the district court are waived on appeal"); Ehrhart v. Secretary of Health & Human Services, 969 F.2d 534, 539 (7th Cir. 1992) ("[W]e observe that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."); Bollas v. Astrue, 694 F. Supp. 2d 978, 990 (N.D. Ill. 2010) ("Issues not raised in a claimant's initial brief are generally waived for purposes of review.").  Cf. Glenn v. Secretary of Health & Human Services, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.").)  Because I conclude that the administrative law judge gave good reasons for discounting the statements by the treating physicians, I am denying plaintiff's motion for summary judgment and affirming the commissioner's decision.

The following facts are drawn from the administrative record (AR):

RECORD FACTS

A.  Medical History

In 1998, plaintiff dislocated his kneecap and had a steel plate placed in it.  He was injured in a snowmobiling accident in 1999 and shattered his femur and now has a steel rod in his leg from his hip to his knee.  Plaintiff also injured his shoulder in the same accident; the shoulder has healed and can no longer be surgically repaired.  He sees a chiropractor for

lower back pain.  AR 79.  Despite these ailments, plaintiff held a variety of jobs between 2000 and 2010, including working as a cable installer, a cheese maker and most recently as a truck stop maintenance technician from 2006 to 2010.  AR 71-78.  Plaintiff was 33 and a high school graduate on June 30, 2010, when the truck stop at which he was employed went out of business.  He attempted to find other work, but was unsuccessful.

On May 6, 2011, plaintiff was trying to pull a tractor with another tractor when the chain he was using snapped and struck him in the left ankle, causing a fracture.  AR 255.  He was treated for this injury by Dr. Eckerman, a podiatrist, who performed surgery to repair the ankle in August 2011.  One month after surgery, Dr. Eckerman noted that plaintiff's fracture had been slow to heal but that the pain and swelling had gone down and plaintiff had good range of motion.  AR 302.  Plaintiff reported feeling better through December 2011.  On December 12, 2011, agency physician Dr. Pat Chan reviewed plaintiff's medical record and determined that the record showed that plaintiff's ankle injury was healing, and that all of the medical-vocational guidelines would direct a finding of "not disabled," given Forsythe's age, education and residual functional capacity, all of which would allow him to adjust to other work.  AR 306.

In January 2012, plaintiff complained to Dr. Eckerman of increased pain and swelling.  AR 315.  In February 2012, he went to see another physician, Dr. Logan, who noted that plaintiff's ankle was not giving him significant problems but that plaintiff had a limp and experienced back spasms at night, for which he was taking medication.  AR 345.  In April 2012, Dr. Eckerman noted that plaintiff was still having pain in his ankle.  AR 317.

3

In May and June of 2012, respectively, Dr. Logan and Dr. Eckerman completed a residual functional capacity form noting that plaintiff could not sit or stand for more than fifteen minutes at a time, could walk only 100 feet and would need 15-20 minute breaks eight times during an eight hour workday.  AR 320-24.

In August 2012, Dr. Eckerman stated that plaintiff was "certainly better" and although he still had some irritation when on his ankle "he is pretty active . . . he is on it quite a bit." AR 326.  In his opinion, the lingering pain was probably attributable to the hardware in plaintiff's ankle and tendinitis.  Id.

On December 17, 2012, Dr. Logan evaluated plaintiff and determined that he had a significant amount of pain down his left side that worsened if he was lifting, pushing, standing for over five minutes, going up or down stairs or walking for more than a block. Dr. Logan stated that plaintiff "cannot perform the activities of daily living." AR 347.  On December 19, 2012, Dr. Eckerman evaluated plaintiff and noted that his ankle fracture had nearly healed, he was in regular shoes and he was feeling better, although walking with a limp.  AR 317.

In February 2013, plaintiff had the hardware removed from his ankle.  On February 25, 2013, plaintiff reported his status as improving, and Dr. Eckerman noted that he was healing well without complication, the range of motion in his ankle was acceptable post-operatively and plaintiff was full-weight bearing.  AR 355.  On the same day, Dr. Eckerman wrote plaintiff a note that stated:

To Whom It May Concern:

Riley Forsythe is currently under my medical care and may not return to work at this time.  Activity is restricted as follows: off work due to foot surgery and being non-weightbearing.

If you require additional information please contact our office.

AR 353.  The sutures were removed from plaintiff's ankle in March 2013.  On March 4, 2013, Dr. Eckerman noted that plaintiff had very little pain and swelling, his work status was "light work/activity," and he was not taking any pain medication.  AR 351.

## B.  Adminstrative Law Judge's Decision

At step one of the five-step analysis prescribed in 20 C.F.R. § 404.1520, the administrative law judge found that plaintiff had not been engaged in gainful employment since June 30, 2010.  At step two, the administrative law judge found that plaintiff suffered from the severe impairments of a left femur fracture, left ankle fracture, left knee arthroscopy and right rotator cuff impairment.  He also found that plaintiff had degenerative disc disease of the thoracic and cervical spine, but that this impairment was not severe in light of the records from plaintiff's chiropractor indicating that plaintiff's condition improved quickly with treatment.  At step three, the administrative law judge concluded that none of the impairments were medically equivalent to any of the listed impairments in 20 C.F.R. § 404, Appendix 1.  The administrative law judge stated that because there was no listing for obesity, he considered plaintiffs's obesity in assessing his other impairments and their relationship to the requirements of the listings.  AR 33.

The administrative law judge then determined that the plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except that he should only occasionally reach overhead with his right arm.  AR 33.  The administrative law judge explained although plaintiff's medical impairments could reasonably be expected to cause the symptoms plaintiff alleged, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  AR 34.  He then gave the following reasons for making his residual functional capacity determination:  the record confirmed that plaintiff's femur fracture, shoulder injury and left knee impairment were longstanding problems that had not prevented plaintiff from working in the past; plaintiff stopped working around the time of his alleged onset date of June 30, 2010, because the business where he worked closed; the record contained no evidence of treatment for nearly a year following plaintiff's alleged onset date until May 6, 2011, when plaintiff was trying to pull a tractor with another tractor and the chain he was using snapped, fracturing his ankle; plaintiff had reported in February 2012, that the ankle was not giving him a significant amount of difficulty; plaintiff's medical records indicated that his ankle injury improved within 12 months to the point that plaintiff could perform sedentary work; and the activity level plaintiff described at the hearing was not consistent with greater limitations than those assessed by the administrative law judge.  AR 34.

At step four, the administrative law judge concluded that plaintiff could not perform any relevant past work under the residual functional capacity finding he had made.  AR 36.

At step five, the administrative law judge found from the testimony of a vocational expert that plaintiff could work as production worker, information clerk or cashier.  AR 37.

OPINION

In his March 22, 2013 written opinion, the administrative law judge gave little weight to the opinions of Dr. Logan and Dr. Eckerman, finding that the record did not support the extreme limitations they had assessed in 2012 and 2013.  It is a well-settled rule that a treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013).  Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it.  Id. at 636.  In making his decision, the administrative law judge must build a logical bridge from the evidence to his conclusion.  Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).  "[A]n ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight."  Hall ex rel. Hall v. Astrue, 489 F. Appx. 956, 958 (7th Cir. 2012).

The administrative law judge gave the following reasons for not incorporating all of the limitations assessed by plaintiff's treating physicians:

1. Dr. Logan's assertion that the claimant could not perform his activities of daily living was not supported by plaintiff's own testimony in which he reported helping his parents around the house and helping care for his son;

2. The extreme limitations described by Dr. Eckerman were inconsistent with plaintiff's own testimony about his level of activity;

3. Around the same time Dr. Logan provided his opinions, the record showed that plaintiff was less symptomatic and pretty active, and that his ankle was well-healed;

4. The evidence in the record indicated that plaintiff's condition improved significantly;

5. It appeared that Dr. Eckerman's February 2013 opinion that plaintiff might not return to work was related to the recent surgery plaintiff described at the hearing, and there was no indication it was intended to be more than a temporary restriction.

AR 34. The administrative law judge gave great weight to the opinions of the agency physicians that plaintiff did not have any functional limitations between June 30, 2010 and May 5, 2011, and that after May 5, 2011, he should be limited to a sedentary exertional level. Id. The administrative law judge determined that these opinions were fully supported by the medical evidence in the record. Id.

Plaintiff objects to the administrative law judge's determination, contending that he gave too much weight and consideration to plaintiff's daily activities. Plaintiff is correct in saying that helping his parents around the house and caring for his son are not sufficient by themselves to rebut his treating physicians' opinions. The Court of Appeals for the Seventh Circuit has cautioned "that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy, 705 F.3d at 639. Plaintiff testified that he typically very little around the house, but helped his parents occasionally with the dishes, sweeping, vacuuming and doing laundry. AR 81. He also helps care for his son. AR 82. Although the

8

administrative law judge said that plaintiff did not testify to having significant difficulty with daily activities, the activities at issue are light ones that can be done in a very short time and with minimal effort.  On its own, plaintiff's ability to do these chores is not sufficient to rebut the opinions of plaintiff's treating physicians or to show that plaintiff was capable of performing full-time sedentary work.  This flaw does not mandate a remand, however, because the administrative law judge gave several other good reasons for discounting the opinions of the treating physicians.  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result.").

Plaintiff admits that "the problem which precluded him from competitive employment was, in part, the nonunion of his broken left ankle."  Plt.'s Br., dkt. #12 at 14. (Although plaintiff uses the term "in part," he does not argue in his brief that other impairments precluded him from competitive employment).  However, the administrative law judge determined that the limitations that the physicians assessed for plaintiff, particularly regarding his ankle, were not consistent with the evidence in his medical record showing that plaintiff's condition had improved significantly by the time the physicians had completed the residual functional capacity forms in May and June 2012 and that it continued to improve.

The administrative law judge's reasoning is well-founded.  As detailed in the facts section of this opinion, the record shows the following:

- May 6, 2011:  Plaintiff fractured his ankle.

- May 7, 2011:  Dr. Eckerman performed surgery to repair ankle.

- August 10, 2011:  Dr. Eckerman performed second surgery to repair ankle.

- September 2011:  Dr. Eckerman noted that plaintiff's pain and swelling had gone down and he had good range of motion.

- December 2011:  Plaintiff reported feeling better.  Dr. Chan directed finding of "not disabled" because ankle was healing and plaintiff could adjust to sedentary work.

- January 2012:  Plaintiff complained to Dr. Eckerman of increased pain and swelling in his ankle.

- February 2012:  Plaintiff saw Dr. Logan, who noted that plaintiff's ankle was not giving him significant difficulty.

- May 9, 2012:  X-rays of plaintiff's ankle showed that the fracture was healed.

- May 11, 2012:  Dr. Logan completed residual functional capacity form saying plaintiff suffered from unspecified problems with his left ankle, knee, hip, and right shoulder, and estimating that plaintiff could walk only 100 feet, sit or stand for only 15 minutes at a time, needed eight 15-minute breaks in an eight-hour day, could never lift more than ten pounds and was not capable of working on a full time basis.

- June 4, 2012:  Dr. Eckerman completed residual capacity form saying plaintiff suffered from post-operative pain in his left ankle; Dr. Eckerman assessed the same limitations Dr. Logan had, except for estimating that plaintiff could lift 20 pounds occasionally.

- August 2012:  Although plaintiff had some lingering pain, Dr. Eckerman noted that plaintiff was "certainly better" and on his ankle "quite a bit."

- December 17, 2012:  Dr. Logan estimated plaintiff could walk for only five minutes, sit for approximately 30 minutes and could not perform his activities of daily living.

- December 19, 2012:  Dr. Eckerman evaluated plaintiff, noting that the fracture had nearly healed and plaintiff was in regular shoes and feeling better, although walking with a limp.

- February 2013:  Dr. Eckerman removed hardware from plaintiff's ankle.

- February 25, 2013:  Plaintiff reported to Dr. Eckerman that he was improving, and Dr. Eckerman noted that plaintiff was healing well without complication, had acceptable range of motion and was full-weight bearing.

- February 25, 2013:  Dr. Eckerman wrote a note restricting plaintiff from working because of recent foot surgery.

- March 4, 2013:  Sutures removed from plaintiff's ankle and Dr. Eckerman noted that plaintiff had very little pain and swelling, his work status was "light work/activity" and he was not taking any pain medication.

As noted by the administrative law judge, the evidence shows that by May 2012, plaintiff's ankle fracture had healed and was not giving him any significant difficulty. Although plaintiff suffered some lingering pain from the hardware in the later half of 2012, Dr. Eckerman stated in August 2012 that plaintiff was active and remained on his ankle quite a bit.  Nonetheless, on December 17, 2012, Dr. Logan wrote that plaintiff could walk for only five minutes, sit for approximately 30 minutes and could not perform his activities of daily living.  Only two days later, on December 19, 2012, Dr. Eckerman evaluated plaintiff and noted that his fracture had nearly healed, he was in regular shoes and feeling better.  After the hardware was removed from plaintiff's ankle in February 2013, his pain subsided to the point that he could perform light work and activity and not take any pain medication.  Accordingly, it was reasonable for the administrative law judge to conclude from this evidence that the physicians' assessments of plaintiff in the medical record and on the

residual functional capacity forms were internally inconsistent, as well as inconsistent with the other substantial evidence in the record.  Hall, 489 F. Appx. at 958.

Although plaintiff concedes that his broken ankle improved, he says that the administrative law judge failed to consider Dr. Logan's statements that he required heavy doses of pain medications that made him drowsy and dizzy.  Plt.'s Br., dkt. #12 at 14.  However, the administrative law judge acknowledged that he had not accommodated all of plaintiff's alleged symptoms because he had considered the evidence and determined that some of plaintiff's statements were not entirely credible as to the intensity, persistence and limiting effects of some of his symptoms, including drowsiness.  AR 34.  Because plaintiff has not challenged the administrative law judge's credibility determination, he has waived the argument.  Even if he had not, I find that the administrative law judge did not commit any obvious error in reaching his credibility determination.

An administrative law judge's credibility determination is entitled to deference only if he explains his reasoning and builds an accurate and logical bridge from the evidence to his conclusion, "but he need not provide a complete written evaluation of every piece of testimony and evidence." Shideler v. Astrue, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting Schmidt v. Barnhart, 395 F.3d 737, 744 (7th Cir. 2005).  In this case, the administrative law judge pointed to specific evidence in the record that supported his credibility determination.  He noted that plaintiff reported significant improvement in his ankle and that plaintiff was not always compliant with the recommendations of his doctors.  The administrative law judge determined that this evidence conflicted with the level of symptoms

12

and limitations described by plaintiff.  AR 34.  Further, the administrative law judge noted the lack of any record of plaintiff's seeking medical treatment for any of his ailments between his alleged onset date of June 30, 2010, the same day his former place of employment went out of business, and May 6, 2011, when he fractured his ankle in the tractor accident.  AR 36.  These were good reasons for not giving weight to plaintiff's reports of dizziness and drowsiness.

Plaintiff does not challenge the administrative law judge's conclusion that Dr. Eckerman's February 2013 opinion does not amount to a permanent restriction.  That conclusion is also well founded.  AR 35, 353.  Dr. Eckerman's opinion consisted of two sentences:  "Riley Forsythe is currently under my medical care and may not return to work *at this time*.  Activity is restricted as follows: off work *due to foot surgery* and being non-weightbearing."  AR 353 (emphasis added).  The surgery was to remove the hardware that had been placed in plaintiff's ankle in 2011 to facilitate healing of the fracture.  AR 34.  It was reasonable for the administrative law judge to infer from Dr. Eckerman's statement that plaintiff could not return to work "at this time" meant that plaintiff was restricted from working only so long as the surgical wound had not healed, not to restrict him permanently from working.  Further, in March 2013, Dr. Eckerman noted that plaintiff was able to perform light work and activity, indicating that he was revising the previous restriction of no weightbearing activity.

It is worth noting that although plaintiff's brief focuses almost entirely on plaintiff's ankle injury, Dr. Logan indicated on the residual functional capacity form that plaintiff's

femur fracture, shoulder injury and left knee impairment prevented him from standing for more than five to eight minutes at a time, walking for more than a block or sitting for more than twenty minutes.  AR 320-22.  Plaintiff testified to the same limitations.  AR 80-84. The administrative law judge did not find these limitations credible because they related to longstanding problems that had not kept plaintiff from working in the past up until his employer's business closed on June 30, 2010.  AR 34, 208.  The administrative law judge also noted that the record showed that plaintiff had not sought any medical treatment between June 2010 and May 6, 2011, when he fractured his ankle.  AR 34.  The record supports the administrative law judge's findings.  Nothing in the record indicates that plaintiff sought treatment for symptoms related to these prior injuries, and plaintiff reported working several jobs without significant difficulty for at least eleven years after injuring his femur, shoulder and knee.  AR 71-78.  Nonetheless, the administrative law judge gave plaintiff the benefit of the doubt and took into consideration all of the effects of plaintiff's impairments, before limiting plaintiff to sedentary work with occasional overhead lifting for the entire period at issue.  AR 35.

In sum, I find that the administrative law judge properly considered all of the medical evidence and the record as a whole when deciding to give little weight to Dr. Logan's and Dr. Eckerman's opinions and that he provided well founded reasons for his decision. Accordingly, I am affirming the administrative law judge's decision.

ORDER

IT IS ORDERED that plaintiff Riley Forsythe's motion for summary judgment, dkt.
#11, is DENIED and the decision of defendant Carolyn Colvin, Acting Commissioner of
Social Security, is AFFIRMED.   The clerk of court is directed to enter judgment for
defendant and close this case.

Entered this 23d day of April, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge